**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-80002-CV-ROSENBERG**
**MAGISTRATE JUDGE REID**

TERYLEISHA E. WRIGHT,

        Petitioner,

v.

SEC'Y, DEP'T OF CORRECTIONS,

        Respondent.

## REPORT OF MAGISTRATE JUDGE

Petitioner, **Teryleisha E. Wright**, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, attacking her judgment of conviction in Case No. 50-2011-CF-004520-AXXX-MB in the Fifteenth Judicial Circuit of Florida, Palm Beach County. For the reasons discussed below, the Petition should be **DENIED**.

### I.       Background

On June 10, 2011, Petitioner was charged with (1) one count of attempted first-degree murder and (2) one count of being a felon in possession of a firearm. [ECF No. 10-1 at 2-3[1]].

A.       Trial Testimony

Petitioner's trial started on November 27, 2012. [ECF No. 11-1 at 1]. The state presented the following relevant testimony.

On April 23, 2011, in the early morning, West Palm Beach Police Department ("WPBPD") Officer Jones responded to a shooting. [ECF No. 11-2 at 36-37]. He later identified the victim as Ryan Rutledge. [*Id.* at 38]. The paramedics pronounced Rutledge dead at the scene. [*Id.* at 39].

---

[1] All page citations for ECF entries refer to the page-stamp number at the top, right-hand corner of the page.

Joanne Rumbelow, Crime Scene Investigator ("CSI") for the WPBPD, documented two spent casings. [*Id.* at 45, 55]. One was .32 caliber. The other appeared to be a rifle round. *See, e.g.*, [*id.* at 55, 67, 72]. Brian Arlotta, a detective for the WPBPD, went to a Days Inn hotel to investigate information that a firearm used in Rutledge's homicide was in one of its rooms. [*Id.* at 96]. Two people exited the room and Arlotta and other detectives followed their vehicle. [*Id.*] Terry Wright, Petitioner's mother, was driving. [*Id.* at 101]. The detectives stopped the vehicle and received consent to search it. [*Id.* at 99].

Initially, Arlotta did not find anything of value. [*Id.* at 100]. Wright asked the detectives to follow her home because she was worried about her safety. [*Id.*]. The passenger walked away when they arrived, saying that she was going to the store. [*Id.*]. A few minutes later, detectives who stayed behind at the hotel called Arlotta and reported that the passenger had returned to the hotel. [*Id.*]. Arlotta returned to the hotel and later Wright returned as well. [*Id.* at 101]. There, Wright gave detectives consent to search her vehicle. Arlotta noticed a semi-automatic pistol on the ground behind the trunk. [*Id.* at 103]. The gun was concealed with a "light coating of pine needles" and looked as if someone had recently placed it there. [*Id.* at 103-04]. Amy Milstead, CSI for the WPBPD, collected the gun found behind the car. [*Id.* at 110, 112-13]. It contained seven live .32 Sellier & Bellot ("S&B") rounds. [*Id.* at 113].

Jennifer Stuart, Firearms Unit Manager in the Forensic Sciences Division at the Palm Beach Sheriff's Office Crime Laboratory, identified the gun found at the hotel as a Kel Tech semi-automatic .32 pistol ("pistol"). [*Id.* at 120, 123]. Stuart test-fired the pistol. Although it fired, the casing did not eject. She had to manually remove the casing and reinsert the magazine to fire a second shot, after which the casing again did not eject. [*Id.* at 130-31].

The .32 casing recovered from the scene was from an S&B .32 cartridge. [*Id.* at 134]. But Stuart could not conclude that the casing recovered from the scene was fired from the pistol that Stuart test-fired. [*Id.* at 139-45]. Stuart could not eliminate this possibility either. [*Id.* at 145]. She added that .32 caliber "would fall into a small/medium caliber." [*Id.* at 136].

Wright, Petitioner's mother, testified that she took bullets from her house to the hotel room, and that Petitioner could have taken these bullets to her house. [*Id.* at 160-63]. Wright recovered a gun from the backyard of her niece's house. [*Id.* at 163]. A group of kids, some of whom were her nephews, buried the gun there. [*Id.*] Wright put the gun under the car and covered it in pine needles. [*Id.* at 167].

Ernestine Tedford was dating Petitioner at the time of the shooting. [*Id.* at 171, 173, 175]. Regarding the shooting, Tedford witnessed that: (1) Petitioner had a little gun; (2) Rutledge had a gun; (3) Petitioner and Rutledge were arguing; (4) Petitioner's brother was trying to calm both of them down; (5) shots were fired, Rutledge went down, and Wright ran to get into a car; and (6) Tedford did not see who fired the shots. *See, e.g.*, [*id.* at 182, 184-87, 196].

Tedford told a detective during a post-shooting interview that she saw Petitioner stand over Rutledge and shoot him a couple of times. [*Id.* at 205]. Furthermore, in text messages, she asked Petitioner why she killed Rutledge. [*Id.* at 207]. Additionally, Tedford told someone in a text that Wright was about to stop, but turned around and shot some more, killing Rutledge. [*Id.* at 213]. On cross-examination, however, Tedford stated that the detective pressured her into saying that she saw Petitioner stand over Rutledge and shoot him. [*Id.* at 216].

Ira Smith lived next door to Rutledge and witnessed key events during the shooting. [ECF No. 11-3 at 8]. Petitioner had a small gun. Rutledge also had a gun, but Petitioner pulled hers out first. Petitioner's brother was telling them to chill. Rutledge threatened to kill Petitioner.

Petitioner's brother said he was not going to let him do that to Petitioner. Shots were fired, but Smith did not see who fired the shots. Smith ran to his house. Shortly thereafter, he went back outside. He saw Petitioner shoot Rutledge when he was on the ground. Right before she did, she said something like "oh, [N****], he ain't dead yet." Petitioner got into a car with her brother and sped off. *See, e.g.*, [*id.* at 10-13, 18-27, 49-50, 57, 60-61].

Dyrret Eley, Smith's stepfather, lived with Smith. He stated that Petitioner and Rutledge were arguing, and Petitioner had a gun. Petitioner's brother was telling Rutledge to chill because that was his sister. Rutledge fired a shot into the air. Petitioner ran toward Rutledge and fired five or six shots. Rutledge was hit and fell. Petitioner stood over Rutledge, said "this fuck [N****] ain't dead yet," and shot him. Petitioner ran after she shot Rutledge. Eley went to Rutledge's aid, telling him to breathe. Rutledge was trying to talk but could not. Then blood came out of Rutledge's mouth and he died. Rutledge did not have a gun when he was on the ground. *See, e.g.*, [*id.* at 62-63, 69-71, 73-77, 79, 89, 95-97, 99].

Raymond Shaw, a WPBPD detective, recovered two boxes of bullets at the hotel room. Some were S&B .32 caliber. Others were .38 caliber Winchesters. Shaw found the boxes wrapped in a plastic garbage bag in a trash can. Shaw obtained an arrest warrant for Petitioner. The U.S. Marshals Fugitive Apprehension Team arrested her in Fort Pierce, Florida.

Shaw presented a murder case against Petitioner's brother to the State Attorney's Office. The State Attorney's Office did not bring charges because it believed that Petitioner's brother shot Rutledge in defense of Petitioner. [*Id.* at 104-05, 115, 117-19, 121-22, 147].

Dr. Reinhard Motte, medical examiner for Palm Beach County, performed Rutledge's autopsy. [*Id.* at 153]. Rutledge was hit with four shots, three of which were fatal. *See, e.g.*, [*id.* at 159-60, 162-65, 168-70, 173-75].

4

Petitioner testified in her defense. On the night of the shooting, she stopped by a house next to Rutledge's to get cups of liquor. Rutledge came from the back of the house and started yelling at her, though she does not know why. Rutledge threatened to hit her and had a gun in his hand. Petitioner's brother exited the car to defuse the situation. Petitioner's brother and Rutledge walked to the back of the house. Meanwhile, Petitioner went and sat in the car.

At some point, Petitioner tussled with her cousin, an occupant of the vehicle, because he wanted her to get back in the car. This caused her cousin's gun to fall. She picked it up and put in the car. Petitioner left the car to get her liquor. But she went back and got the gun because she felt Rutledge might shoot her. She told her brother to leave and he walked toward her. Then Rutledge said "fuck that shit," ran past her brother, and started shooting. Rutledge and Petitioner exchanged gunfire. Petitioner returned fire because she thought he was going to kill her. Petitioner ran out of ammunition. At this time, Rutledge was lying on the ground. Petitioner did not stand over him and shoot him. Rather, she ran and got in the car. Petitioner did not report the shooting to the police because she thought that she had shot her brother and she was trying to find him. While she knows that she should not have gone to Fort Pierce, she did not contact the police for two reasons. She did not want to endanger her family and friends because she had heard about Tedford and others being threatened. Also, she did not know what to do; even though she was defending herself, she knew that you were not supposed to shoot anyone.

Tedford (Petitioner's then-girlfriend) asked Petitioner why she killed Rutledge in a text after the shooting. Petitioner responded, "You gonna snitch, man?" In another text, Petitioner asked Tedford who had talked to the police.

After the shooting, Petitioner's cousin, whose gun she used to shoot Rutledge, was mad at her and took the gun. Petitioner's cousins buried their guns in the backyard. It is possible that

Wright (Petitioner's mother) has seen her burying guns in her cousins' backyard. The gun that she used to shoot Rutledge could be the gun that her mother recovered from the backyard of Wright's niece's house. Petitioner went to her cousin's house after the shooting. Then, her brother took her to Fort Pierce, Florida.

The shooting happened on April 23, 2011. Petitioner was in Fort Pierce until the Marshals apprehended her on May 12, 2011.

[*Id.* at 205-06, 210-13, 21, 217-19, 221, 223-25, 227-30, 243-50].

B.    Verdict and Post-Trial Proceedings

On December 5, 2012, a jury convicted Petitioner of attempted first-degree murder. [ECF No. 10-1 at 5-7]. The jury found in special interrogatories that Petitioner actually: (1) possessed a firearm; (2) discharged it; and (3) caused great bodily harm to the victim. [*Id.*] The court sentenced Petitioner to 35 years in prison, with a 25-year mandatory minimum sentence. [*Id.* at 9-13]. Petitioner appealed. On January 7, 2015, the Fourth District Court of Appeals ("Fourth District") affirmed. [*Id.* at 64-65].

On September 29, 2015, in the trial court, Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. [*Id.* at 69-94]. She raised most of the issues she raises in the instant § 2254 Petition. The state filed a response. [*Id.* at 99-119]. On January 3, 2017, the postconviction court[2] denied Petitioner's postconviction motion, incorporating by reference the state's response and its attachments. [*Id.* at 121]. Petitioner appealed. [*Id.* at 123-51]. The Fourth District did not require an appearance by the state and, on June 15, 2017, affirmed without comment. [*Id.* at 153].

---

[2] The Undersigned refers to the trial court that denied Petitioner's postconviction motion as postconviction court.

Petitioner timely filed her § 2254 Petition. [ECF No. 1]. The state filed a Response and supporting appendices. [ECF Nos. 9, 10, 11]. Petitioner filed a Reply. [ECF No. 12]. Accordingly, this case is now ripe for disposition.

## II.      Legal Standard Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under its "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *See id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). For § 2254(d)(1) purposes,

the application must be "objectively unreasonable." *Id.* (citation omitted). "This distinction creates a substantially higher threshold for obtaining relief than *de novo* review." *Id.* (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015). That is, "[a] state court's . . . determination of facts is unreasonable only if no 'fairminded jurist' could agree with the state court's determination . . . ." *Id.* (citation omitted).

Under § 2254(d), "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,]" "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018). But where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

A contrastable situation occurs when the decision of the last state court to decide a federal claim contains no reasoning and there is "no lower court opinion to look to." *Id.* at 1195. In this case, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99 (citation omitted). Thus, "[s]ection 2254(d) applies even [though] there has been a summary denial." *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted). Because § 2254(d) applies, and because the last state court decision is unreasoned and there is no lower court decision

to look to, "a habeas court must determine what arguments or theories . . . could have supported[]

the state court's decision[.]" *Harrington*, 562 U.S. at 102.

### III.    Analysis

A.    <u>Claim 1</u>

#### 1.    *Relevant Background*

Petitioner contends that the trial court violated due process by striking her *pro se* motion

for a new trial. [ECF No. 1 at 6]. In this motion, she generally argued that she was entitled to a

new trial under Florida law because: (1) the state failed to present physical or scientific evidence

supporting its theory of the case; and (2) she was acting in self-defense when she shot Rutledge.

[ECF No. 10-1 at 15, 17]. The trial court struck this motion, reasoning that it was a nullity because

counsel still represented Petitioner, whom the court had yet to sentence. [*Id.* at 19].

Petitioner concedes that she did not exhaust this claim. [ECF No. 1 at 6]. The Undersigned

finds it procedurally defaulted.

#### 2.    *Discussion*

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available

state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and

correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

(citation omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly

present' his claim in each appropriate state court . . . , thereby alerting that court to the federal

nature of the claim." *Id.* (citations omitted).

A claim is procedurally defaulted for purposes of federal habeas review "'if the petitioner

failed to exhaust state remedies and the court to which the petitioner would be required to present

[the claim] in order to meet the exhaustion requirement would now find the claim[ ] procedurally

barred.'" *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 956-57 (11th Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

The procedural rule under which the state court would find the claim barred must be "adequate and independent." *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003). "State rules count as adequate if they are firmly established and regularly followed." *Johnson v. Lee*, 578 U.S. ___, 136 S. Ct. 1802, 1804 (2016) (*per curiam*) (citation omitted). Usually, state rules count as independent if their application does not turn on a federal constitutional question. *See Frazier v. Bouchard*, 661 F.3d 519, 525 (11th Cir. 2011) (citation omitted).

Under Florida law, a defendant generally must file a Rule 3.850 motion within two years after her "judgment and sentence become final." Fla. R. Crim. P. 3.850(b). "A judgment and sentence become final for the purpose of rule 3.850 when any direct review proceedings have concluded and jurisdiction to entertain a post-conviction motion returns to the trial court." *Lewis v. State*, 196 So. 3d 423, 424 (Fla. Dist. Ct. App. 2016) (citation omitted). Where, as here, the defendant does not pursue an appeal to the Florida Supreme Court, this occurs when the District Court of Appeals issues its mandate. *See Miller v. State*, 601 So. 2d 604 (Fla. 4th DCA 1992) (citations omitted); *see also Breland v. State*, 58 So. 3d 326, 327 (Fla. 1st DCA 2011) (collecting cases). The Eleventh Circuit has held that Rule 3.850's two-year statute of limitation is adequate and independent. *See Johnson v. Singletary*, 938 F.2d 1166, 1174 (11th Cir. 1991) (*en banc*); *see also Ferguson v. Sec'y for Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (citation omitted).

Here, the Fourth District issued its mandate affirming Petitioner's conviction and sentence on February 6, 2015. [ECF No. 10-1 at 67]. Petitioner did not seek review in the Florida Supreme Court. [ECF No. 1 at 2]. Therefore, more than four years have elapsed since her judgment of

conviction and sentence became final. As a result, she could not return to state court and raise Claim 1; the state court would deny it as untimely.

"Moreover, [Petitioner] has not presented [the Court] with any argument about cause and prejudice or a miscarriage of justice to overcome the procedural bar." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1354 (11th Cir. 2012). In her Reply, she suggests that counsel ineffectively failed to move for a new trial. [ECF No. 12 at 1-2]. However, she does not allege, much less show, cause for her failure to raise this claim in her Rule 3.850 motion or that this court's failure to consider this claim would constitute a miscarriage of justice.

In sum, claim 1 is procedurally defaulted. As a result, it should be dismissed.

B.       Ineffective Assistance of Counsel Principles

Most of Petitioner's remaining claims allege ineffective assistance of counsel. Thus, the Undersigned states the general principles governing such claims before proceeding with the analysis. To establish a claim of ineffective assistance of counsel, petitioner must show that her attorney's performance was deficient, and that the deficient performance prejudiced her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To prove deficiency, she must show that her attorney's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Harrington*, 562 U.S. at 105. As the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* (citation omitted). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Finally, Petitioner has the burden of proof on her ineffectiveness claim, *see Holsey v. Warden*, 694 F.3d 1230, 1256 (11th Cir. 2012), as well as the burden of proof under § 2254(d). *See Cullen*, 563 U.S. at 181.

C.    Claim 2

1.    *Petitioner's Argument*

Petitioner contends that defense counsel ineffectively failed to call her brother, whom she alleges would have provided favorable testimony. [ECF No. 1 at 9; ECF No. 12 at 3-7]. He allegedly "could have testified that he never saw the Petitioner stand over the victim and shoot him while he was on the ground." [ECF No. 12 at 5]. The postconviction court rejected this claim, reasoning:

> Trial counsel's failure to call this witness cannot be considered either deficient performance or prejudicial because the testimony [petitioner] sought to admit was offered through her testimony and through other witnesses' testimony. Moreover the state's evidence was overwhelming, and thus there is no reasonable likelihood that it would have changed the outcome of the case.

[ECF No. 10-1 at 106, 121].

2.    *Discussion*

Here, the record supports the finding that Petitioner and other witnesses gave the testimony that Petitioner speculates her brother would have given. Tedford testified that she did not see Petitioner stand over Rutledge and shoot him, and Petitioner testified that she did not do so. Thus,

12

even if counsel deficiently failed to call Petitioner's brother, the postconviction court reasonably concluded that Petitioner failed to show prejudice. *See Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) ("Obviously, a petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented at trial." (citing, *inter alia*, *Wong v. Belmontes*, 558 U.S. 15, 22 (2009))).

In sum, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. As such, deference is due, and this claim should be denied.

D.    Claim 3

Petitioner contends that counsel ineffectively advised her to reject a 15-year plea offer and go to trial. [ECF No. 1 at 13]. This claim lacks merit and should be denied.

1.    *Relevant Background*

During jury selection, the trial court colloquied Petitioner about a 20-year plea offer that the state had extended. [ECF No. 11-1 at 5-7]. She stated that her attorney conveyed the offer to her and that she had "discussed[ed] that offer and [the] implications of that offer with [her attorney]." [*Id.* at 6-7]. Further, the court told Petitioner that she faced a 25-year mandatory minimum and that the decision whether to accept the 20-year plea offer was up to her. [*Id.*]. Petitioner stated that she had decided to reject the offer and go to trial. [*Id.* at 7].

2.    *Petitioner's Argument*

Counsel ineffectively advised her to reject the alleged 15-year plea offer and go to trial. Counsel told her that "the prosecutor did not have any evidence that would support a guilty verdict and that . . . Eley had once again changed his statement." [ECF No. 12 at 8]. Also, counsel told her that no physical evidence supported the state's theory that petitioner stood over Rutledge and shot

him. [*Id.*]. The postconviction court rejected this claim, holding that Petitioner could not show deficiency or prejudice given the above colloquy. [ECF No. 10-1 at 104-06, 121].

3.    *Discussion*

"The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citation omitted). And, under § 2254(d), "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Here, regarding deficiency, the record reflects that the state extended a 20-year plea offer, not a 15-year plea offer as petitioner alleges. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Petitioner's conclusory allegations fail to show otherwise. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)); *see also Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333-34 (11th Cir. 2012). Because she has not shown that the state made a 15-year plea offer, she cannot show that counsel deficiently advised her not to accept this alleged offer. *See Cullen*, 563 U.S. at 181; *see also Holsey*, 694 F.3d at 1256.

Furthermore, any claim that counsel deficiently advised her to reject the 20-year plea offer would still fail. Petitioner stated that she discussed this supposed offer with counsel and still wanted to go to trial. Her consent to proceed to trial "[is] probative of the reasonableness of the chosen strategy and of trial counsel's performance." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995); *see also Pitts v. Sec'y, DOC & Fla. Att'y Gen.*, No. 2:15-CV-13-FTM-29MRM, 2016 WL 128559, at *5 (M.D. Fla. Jan. 12, 2016) ("If the Defendant consents to counsel's strategy, there is no merit to a claim of ineffective assistance of counsel." (citing *Gamble v. State*, 877 So. 2d 706,

714 (Fla. 2004))). While Petitioner contends that counsel told her that the state could not convict her, inducing her to reject the plea offer, this contention is conclusory. [ECF No. 12 at 8].

In sum, there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Thus, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Accordingly, deference to the state court is due and this claim should be denied.

E.      Claim 4

1.      *Petitioner's Argument*

Petitioner contends that counsel ineffectively failed to explain to her that "a minimum mandatory sentence mean that she would be forced to serve the minimum 25 years . . . without [the] possibility [of] earn[ing] gain time." [EC No. 1 at 13]. Further, she contends that, had counsel so explained, she would have accepted her plea offer. [ECF No. 12 at 9-10]. The postconviction court rejected this claim, reasoning that Petitioner could not show deficiency or prejudice. [ECF No. 10-1 at 104-06, 121]. The Undersigned addresses only the prejudice prong.

2.      *Discussion*

"Having to stand trial, not choosing to waive it, is the prejudice alleged." *Lafler*, 566 U.S. at 164. "In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., *that the defendant would have accepted the plea* and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* (emphasis added).

15

Here, the trial court informed Petitioner that she could accept or reject the 20-year plea offer and that she faced a 25-year mandatory minimum if convicted. Therefore, it is reasonable to conclude that, even had counsel told Petitioner that she would not be able to earn gain time, she still would have gone to trial. Petitioner was aware of the prospect of a 25-year sentence when she pleaded guilty.

In sum, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. As such, this claim should be denied.

F.      Claims 5 and 6

The Undersigned considers claims 5 and 6 together because they are essentially the same. These claims lack merit and should be denied as discussed below.

1.      *Petitioner's Argument*

Petitioner contends that counsel "was ineffective for failing to request a Stand Your Ground hearing or present a Stand Your Ground defense." [ECF No. 12 at 11]. In support, Petitioner contends that she informed counsel before trial that her use of force was justified under the Stand Your Ground law. [ECF No. 1 at 15]. However, counsel "refused to consider this as a possibility and instead decided to proceed to trial with a self-defense case." [*Id.*]. Likewise, Petitioner contends that counsel ineffectively advised her to agree with his decision to ask the court to remove the Stand Your Ground jury instruction. [*Id.* at 17; ECF No. 1 at 15].

The postconviction court rejected this claim, reasoning that Petitioner could not show deficiency or prejudice. [ECF No. 10-1 at 109-112, 121]. The Undersigned addresses only the deficiency prong.

2.      *Florida's Stand Your Ground Law*

At the time of the shooting, one provision of Florida's Stand Your Ground law provided:

*A person who is not engaged in an unlawful activity* and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

Fla. Stat. Ann. § 776.013(3) (2012) (emphasis added).

At that time, the Fourth District had held that "possession of a firearm by a convicted felon qualifies as 'unlawful activity' within the meaning of the Stand Your Ground law." *Dorsey v. State*, 74 So. 3d 521, 527 (Fla. 4th DCA 2011) (citation omitted). Therefore, a defendant's possession of a firearm as a convicted felon precluded her from "seeking immunity under the Stand Your Ground law." *State v. Hill*, 95 So. 3d 434, 435 (Fla. 4th DCA 2012) (citation omitted) ("*Hill* I"); *see also Dorsey*, 74 So. 3d at 527.

Subsequently, the Fourth District "recede[d] from [its] statement in [*Hill* I] that a felon in possession of a firearm cannot claim immunity '*under the Stand Your Ground law*' because the statement unintentionally went beyond the statutory provision at hand--section 776.013(3)." *Hill v. State*, 143 So. 3d 981, 985 (Fla. 4th DCA 2014) (*en banc*) ("*Hill* II"). Pertinently, *Hill* II held that *Hill* I was limited to § 776.013(3), and that a defendant's possession of a firearm as a convicted felon does not preclude her from raising a Stand Your Ground defense under Fla. Stat. § 776.012(1). *Id.* at 986-87.

At that time, § 776.012(1) provided:

A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:

(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony[.]

### 3.    *Relevant Background*

Before instructing the jury, the trial court discussed the impact of *Hill* I and the propriety of instructing the jury on the Stand Your Ground law. [ECF No. 11-4 at 3-7]. As the trial court noted, *Hill* I left open the possibility that a defendant who possesses a firearm as a convicted felon could assert a justification (i.e., necessity) defense. 95 So. 3d at 435. The trial court seemed to reason that, if Petitioner could show justification, she would be able to raise a Stand Your Ground defense. [ECF No. 11-4 at 5].

Defense counsel stated that an instruction on justification and the Stand Your Ground law would confuse the jury. [*Id.*]. Yet counsel noted that Petitioner would receive a self-defense instruction irrespective of whether the court gave justification and Stand Your Ground instructions. [*Id.*]. Further, counsel stated that self-defense was "basically [their] defense." [*Id.*]. Counsel added that petitioner consented to this strategy. [*Id.* at 5-6]. Thus, counsel asked the court not to include the justification and Stand Your Ground instructions. [*Id.* at 6].

The trial court questioned petitioner about counsel's decision. [*Id.*]. It explained that, even if the jury found that she engaged in unlawful activity, she still might be able to receive a Stand Your Ground instruction if the jury found justification. [*Id.* at 6-7]. Petitioner said that she understood and that she still consented to counsel's strategic decision. [*Id.* at 7].

### 4.    *Discussion*

Here, there is a reasonable argument that counsel's alleged failure to investigate and pursue a Stand Your Ground defense was not deficient. Counsel believed that Petitioner did not stand to

gain anything by raising a Stand Your Ground defense because: (1) the jury would receive the standard self-defense instruction; and (2) the Stand Your Ground and justification instructions were confusing. The court instructed the jury on self-defense, and counsel argued self-defense to the jury. [ECF No. 11-4 at 28-30, 73-74, 94-96].

Petitioner has not explained how counsel's failure to argue justification and Stand Your Ground disadvantaged her. Nor does the record indicate that it did. Even if Petitioner was justified in using her gun initially, the jury had to consider whether she shot Rutledge as he lay on the ground wounded. Counsel's general strategy appeared to be twofold: (1) argue that Petitioner was defending herself when she initially opened fire on Rutledge; but (2) argue that the state failed to prove that she shot Rutledge as he lay on the ground wounded because of a lack of evidence and conflicting testimony. *See generally* [*id.* at 64-99]. Because Petitioner did not dispute that she fired a gun, and because the state presented compelling evidence that petitioner shot Rutledge as he lay dying, this strategy appears reasonable. *See Harrington*, 562 U.S. at 111 ("When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict.").

Indeed, it is unapparent how a Stand Your Ground defense would have impacted this key issue. At the time, the Stand Your Ground law generally provided that a person could use deadly force and had no duty to retreat if she reasonably believed that such force was necessary to prevent imminent death or great bodily harm. *See* Fla. Stat. Ann. §§ 776.012(1), 776.013(3) (2012). On this record, there is no discernible relationship between this law and whether Petitioner approached a decumbent and dying Rutledge and shot him. Petitioner also stated on the record that she agreed with counsel's strategy. This fact further demonstrates its reasonableness. *See Bell*, 72 F.3d at 429; *see also Pitts*, 2016 WL 128559, at *5. Finally, Petitioner also alleges that counsel failed to

"investigate" a Stand Your Ground defense. However, as noted, the record reflects that counsel weighed the pros and cons of Stand Your Ground and justification instructions. Furthermore, Petitioner stated that she agreed with counsel's strategy not to seek such instructions. Thus, the record contradicts this assertion.

In short, there is a reasonable argument that counsel's decision not to pursue a Stand Your Ground defense was not deficient. Therefore, the state courts' rejection of claims 5 and 6 was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts and these claims should be denied.

G.    Claim 7

1.    *Background*

At the outset of jury selection, the trial court instructed the prospective jurors that: (1) they had to presume Petitioner's innocence; (2) the prosecution must prove its case beyond a reasonable doubt; and (3) Petitioner did not have to present evidence or prove anything. [ECF No. 11-1 at 116]. Two prospective jurors stated that they believed that Petitioner should have to take the stand in her defense. [*Id.* at 126-28]. These individuals were excused for cause. [*Id.* at 211-12, 214].

Two other prospective jurors made comments that one could *conceivably* construe to express concern about the fact that Petitioner did not have to take the stand. [*Id.* at 247-48, 251]. These two individuals were not selected as jurors or alternate jurors. [*Id.* at 307-08, 310]. The court noted that Petitioner had been conferring with her attorney and asked her if she agreed with the decisions that he had made for her during jury selection. [*Id.* at 308]. She stated that she did. [*Id.*].

2.    *Petitioner's Argument*

Petitioner contends that the trial court committed fundamental error by instructing "the jury on Petitioner's right to remain silent without petitioner requesting that the instruction be given."

20

[ECF No. 12 at 17]. Petitioner concedes, however, that she did not raise this claim in state court. [*Id.*]; *see also* [ECF No. 10-1 at 91-92]. Rather, in her postconviction motion, she asserted an ineffectiveness claim based on the same facts. [ECF No. 10-1 at 91-92].

3.   <em>Discussion</em>

As noted, above in Part III(A), a claim is procedurally defaulted for purposes of federal habeas review "'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present [the claim] in order to meet the exhaustion requirement would now find the claim[ ] procedurally barred.'" *Raleigh*, 827 F.3d at 956-57.

Here, Petitioner could not return to the Fourth District and raise the claim for various reasons. The trial court sentenced Petitioner on January 11, 2013, and Petitioner did not raise this claim on direct appeal. [ECF No. 10-1 at 23]. The Undersigned assumes *arguendo* that Petitioner could overcome a potential time bar by successfully petitioning the Fourth District for rehearing. Still, an "issue not raised in an initial brief is deemed abandoned." *Hoskins v. State*, 75 So. 3d 250, 257 (Fla. 2011) (citation omitted). This rule is independent and adequate. *See Hernandez v. Jones*, No. 15-10184-CIV, 2017 WL 6558606, at *9 n.10 (S.D. Fla. Mar. 27, 2017) (citation omitted), *report and recommendation adopted*, No. 15-10184-CIV, 2017 WL 6604570 (S.D. Fla. Oct. 24, 2017); *see also Stoudmire v. Tucker*, No. 3:09CV48/MCR/EMT, 2011 WL 5426239, at *9-10 (N.D. Fla. Aug. 30, 2011) (collecting cases), *report and recommendation adopted*, No. 3:09CV48/MCR/EMT, 2011 WL 5442091 (N.D. Fla. Nov. 9, 2011).

Likewise, for various reasons, Petitioner could not return to trial court and raise this claim in a Rule 3.850 motion. For instance, the trial court would reject the claim as untimely. *See supra* Part III(A).

Finally, this claim would fail even if it were not procedurally defaulted. For one, the Supreme Court has already rejected essentially the same claim that petitioner raises here. *See Lakeside v. Oregon*, 435 U.S. 333, 340-41 (1978) ("We hold . . . that the giving of such an instruction over the defendant's objection does not violate the privilege against compulsory self-incrimination guaranteed by the Fifth and Fourteenth Amendments. . . . [Furthermore,] [w]e cannot accept the proposition that the right to counsel, precious though it be, can operate to prevent a court from instructing a jury in the basic constitutional principles that govern the administration of criminal justice."). Additionally, Petitioner testified; the jury could not have drawn an adverse inference from a nonexistent failure to testify. Petitioner contends that she felt compelled to testify because certain jurors expressed concern about her not testifying. [ECF No. 12 at 17-18]. But these prospective jurors did not sit on the jury.

In sum, this claim is procedurally defaulted and devoid of merit. As such, it should be dismissed or denied.

H.    <u>Claim 8</u>

### 1.    *Petitioner's Argument*

Petitioner contends that counsel ineffectively failed to object to the admission of the following evidence discovered at the hotel: (1) .32 caliber pistol; (2) the box of .32 caliber S&B ammunition; and (3) the box of .38 caliber Winchester ammunition. [ECF No. 1 at 19; ECF No. 12 at 19]. Petitioner argues that this evidence was irrelevant because: (1) the pistol and ammunition were found at the hotel where her mother was staying and "were never found to have been in the possession of the Petitioner"; (2) ballistics testing did not show that the pistol fired the .32 casing found at the scene; and (3) the gun malfunctioned during ballistics testing and, therefore, could not have been the gun Petitioner admittedly used to shoot at Rutledge. [*Id.*]

2.      *The State Court Decisions*

On direct appeal, Petitioner raised a related claim that the trial court erred in admitting the pistol and two boxes of bullets. [ECF No. 10-1 at 37-40]. She did not, however, present this claim as an ineffectiveness claim. The state argued, *inter alia*, that this evidence was relevant. [*Id.* at 54-55, 57-58]. The Fourth District affirmed without comment. [*Id.* at 65]. Similarly, Petitioner argued in her postconviction motion that counsel ineffectively failed to object to the admission of the pistol. [*Id.* at 80-82]. But she did not argue that counsel ineffectively failed to object to the admission of the ammunition. [*Id.*]. The postconviction court rejected this claim. [*Id.* at 112-14, 121]. It held that the pistol was relevant and, therefore, any objection would have been overruled.

3.      *Discussion*

a.      **Pistol**

Counsel did not ineffectively fail to object to the admission of the pistol. Because it was relevant under Florida law, the trial court would have overruled any objection. Under Florida law, "[r]elevant evidence is evidence tending to prove or disprove a material fact." Fla. Stat. § 90.401. "The trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion." *Heath v. State*, 648 So. 2d 660, 664 (Fla. 1994) (citation omitted).

Here, the pistol was relevant. As recounted above, *supra* Part I(A), the state's evidence supported, *inter alia*, the following findings: (1) Petitioner wielded a small gun at the scene; (2) Rutledge was hit with a nonfatal gunshot; (3) the detectives found a .32 caliber S&B casing on the scene; (4) Wright concealed a .32 caliber pistol containing .32 caliber S&B rounds and a box of .32 caliber S&B rounds at the hotel; (5) Petitioner left this ammunition at her mother's house; (6) Wright dug up the pistol from her niece's backyard; (7) Petitioner gave the gun she used to shoot

Rutledge to her cousins; (8) Petitioner and her cousins bury their guns in her cousin's backyard; and (9) Petitioner immediately fled the scene after the shooting and subsequently fled to Fort Pierce, where she stayed until the U.S. Marshals apprehended her.

On this record, the admission of the pistol tended to prove, *inter alia*, that Petitioner used that pistol to shoot Rutledge with a nonfatal gunshot and sought to conceal it from the authorities. Thus, the trial court would have overruled any objection. Counsel did not deficiently fail to raise this meritless objection. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim[.]" (citation omitted)).

In short, the postconviction court's rejection of claim 8 was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Therefore, this claim should be denied.

**b.    Ammunition**

As noted, on direct appeal, Petitioner argued only that the trial court erred in admitting the ammunition. Petitioner did not argue, as she does here, that counsel ineffectively failed to object to its admission. Therefore, this claim is procedurally defaulted. *See supra* Part III(A), (G)(3).

Moreover, this claim would fail even if it were not procedurally defaulted. For the reasons just stated, the box of .32 caliber ammunition was clearly relevant. Granted, the relevance of the box of .38 caliber ammunition is a closer question. After all, the state's theory was that Petitioner shot Rutledge with the .32 caliber pistol.

However, CSI Rumbelow testified that she found a rifle round on the scene. Furthermore, Wright's testimony supported the finding that Petitioner left both .32 and .38 caliber ammunition at her house. [ECF No. 11-2 at 162 (testifying that the bullets that Wright might have left at her house were "a couple of different bullets")]. Additionally, the detectives found both boxes

concealed at the hotel, and Wright fled after the shooting. On this record, the .38 caliber ammunition tended to prove that petitioner was trying to cover up the crime, which may show consciousness of guilt. *See Hickory v. United States*, 160 U.S. 408, 415-16 (1896) ("[C]oncealment of the evidence of crime has been regarded by the law as a proper fact to be taken into consideration as evidence of guilt, as going to show guilt, as going to show that he who does an act is consciously guilty, has conscious knowledge that he is doing wrong, and he therefore undertakes to cover up his crime."); *see also Knight v. State*, 15 So. 3d 936, 938 (Fla. 3d DCA 2009) (citation omitted) ("Evidence of concealment of a murder weapon, or of other efforts to distract investigators, is generally relevant because it reflects 'consciousness of guilt.'" (citation omitted)).

And, even if counsel deficiently failed to object to the admission of the .38 caliber ammunition, this failure was not prejudicial. Eley and Smith testified that Petitioner approached a decumbent, disarmed, and dying Rutledge and shot him. The state supported this eyewitness testimony with evidence of concealment and flight, which shows consciousness of guilt. *See, e.g.*, *Thomas v. State*, 748 So. 2d 970, 982 (Fla. 1999) (*per curiam*) ("[Florida] law is well settled that [w]hen a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, . . . such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance." (alteration in original) (citation omitted)).

I.     Claim 9

1.     *Relevant Background*

During direct examination, the prosecutor questioned Tedford about text messages that she and Petitioner exchanged shortly after the shooting. The prosecutor sought to admit these text messages into evidence. [ECF No. 11-2 at 209]. Initially, defense counsel did not object. [*Id.*]. Then, the prosecutor asked Tedford about text messages that she exchanged with other persons

after the shooting. [*Id.* at 210]. Defense counsel objected on hearsay grounds. [*Id.*]. The court did not initially rule on his objection.

Next, the prosecutor asked Tedford if the text messages would help refresh her recollection and read the following text message: "[Petitioner] did stop and was about to leave [but] turn[ed] around and shot [some more] and killed [Rutledge]." [*Id.* at 211]. Tedford stated that she remembered that text. [*Id.*]. Defense counsel again objected on hearsay grounds. [*Id.*].

The court held a sidebar. Defense counsel stated that there was "no business record exception" for the texts. [*Id.* at 212]. The court overruled the objection because the texts were already in evidence. [*Id.*]. Then the following exchange took place:

> [Defense counsel]: This group of emails or text messages is a business record, and he has the certification.
>
> [The prosecutor]: Yeah.
>
> [The court]: I figured he did, yeah.
>
> [Defense counsel]: Yeah, so uh--
>
> [The court]: Okay.
>
> [Defense counsel]: --it's in evidence but--
>
> [The court]: All right, thank you.

[*Id.* at 212-13].

After that, the prosecutor asked Tedford if she remembered saying Petitioner stopped, turned around, and killed Rutledge. [*Id.* at 213]. Tedford said that she remembered. [*Id.*]. The prosecutor referenced this statement during redirect examination, this time to impeach Tedford's testimony that Det. Shaw coerced her into making an incriminating statement against Petitioner. [*Id.* at 218-19].

During his closing and rebuttal arguments, the prosecutor once more referenced this statement. [ECF No. 11-4 at 51, 101]. Likewise, the prosecutor referenced texts from Tedford accusing petitioner of killing Rutledge. [*Id.* at 52-53, 55]. Defense counsel objected to the prosecutor's referencing of these texts during closing argument. [*Id.* at 51]. The court once more overruled the objection because the texts were in evidence. [*Id.* at 52].

### 2.      *Petitioner's Argument*

Petitioner contends that Tedford's texts were hearsay. [ECF No. 1 at 20; ECF No. 12 at 21]. Further, she contends that the prosecutor used them to prove the truth of the matter asserted, thus implying her guilt. Additionally, she notes that counsel failed to object to their admission when the prosecutor first sought to admit them. This failure, she continues, caused the court not to grant counsel's subsequent objection to their admissibility. Thus, she concludes, this failure constituted ineffective assistance. Petitioner raised this claim in her postconviction motion. [ECF No. 10-1 at 88-90]. The postconviction court held that she failed to show deficiency or prejudice. [*Id.* at 115-16, 121].

### 3.      *Discussion*

Here, the postconviction court reasonably concluded that counsel's failure to object to these texts did not prejudice Petitioner.

The Undersigned assumes, *arguendo*, that Tedford's text that Petitioner turned around and shot Rutledge, as well as the texts that she killed him, were inadmissible hearsay. Nevertheless, Tedford's statements that Petitioner turned around and shot Rutledge and killed him are merely cumulative of the properly admitted testimony of Eley and Smith. Furthermore, the state presented circumstantial evidence Petitioner's guilt. On this record, the postconviction court reasonably concluded that counsel's failure to object earlier to the texts was not prejudicial. *See McKenzie v.*

*Sec'y, Fla. Dep't of Corr.*, 507 F. App'x 907, 909 (11th Cir. 2013) (*per curiam*) (counsel's failure to object to hearsay not prejudicial because hearsay was cumulative of testimony provided by other witnesses); *see also Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008) (same); *Graham v. Sec'y, DOC*, No. 3:12-CV-1282-J-39MCR, 2015 WL 4664364, at *11 n.3 (M.D. Fla. Aug. 6, 2015) (same).

It is unclear whether Petitioner contends that the remaining texts contained in the business records were hearsay. If she does, this argument fails. The only other texts on which the state relied to prove its case were from Petitioner. These texts were admissible hearsay. *See Symonette v. State*, 100 So. 3d 180, 183-84 (Fla. 4th DCA 2012) ("The text messages were authenticated and constitute admissible hearsay evidence because they were admissions, or the defendant's own statements offered against him." (citing Fla. Stat. § 90.803(18))). Furthermore, the prosecutor used Petitioner's texts primarily to impeach her. [ECF No. 11-3 at 243-45]. Thus, they were not hearsay. *See Massey v. State*, 109 So. 3d 324, 328 (Fla. 4th DCA 2013) ("Florida has recognized these common types of nonhearsay utterances: (1) prior inconsistent statements, because they are not offered to prove [their] truth, only to show the inconsistency for impeachment purposes[.] . . ." (citation omitted)); *see also* Fla. Stat. § 90.608(1) ("Any party, including the party calling the witness, may attack the credibility of a witness by: Introducing statements of the witness which are inconsistent with the witness's present testimony.").

In sum, the state courts' rejection of claim 9 was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

J.   Claim 10

1.   *Relevant Background*

After the state rested, defense counsel orally made a motion for a judgment of acquittal. [ECF No. 11-3 at 195]. In support, counsel stated: "It doesn't seem based on the forensic facts of this case that there's anything that would go to the jury." [*Id.*]. The prosecutor responded as follows:

> Judge, I believe we've proven a prima facie case here. We've heard testimony from a number of witnesses, although we don't have I guess forensic evidence, we have lots of circumstantial evidence linking. We know [petitioner] was on [the] scene, buts lots of circumstantial evidence linking [petitioner] to a particular gun that we believe was used at the scene of the crime, along with that shell casing.

> And the testimony of the witnesses that she did run up to the body while he was either on the ground or going down and made some words, and them shot him again. So I believe we've proven the case in the light most favorable to the State.

[*Id.* at 195-96].

The trial court denied the motion, finding that the state had met its burden at that state of the proceedings. [*Id.* at 196].

### 2.   *Petitioner's Argument*

Petitioner contends that counsel "failed to argue facts favorable to Petitioner that conflicted with the [state's] theory of guilt when he requested a judgment of acquittal." [ECF No. 12 at 23]; *see also* [ECF No. 1 at 21]. In support, she contends that the state theorized that: (1) she stood over Rutledge and shot him while he lay on the ground; and (2) the shot entered his nose and exited his skull. [ECF No. 12 at 23]. Further, she contends that the shot entered his left nose and exited near his right eye. *See* [*id.*]. Therefore, she surmises that "the spent projectile should have been recovered directly under the area where the exit [wound] was under the victim [sic]." [*Id.*]. However, even though the state's witnesses testified that they searched the area of evidence, it was not. [*Id.*]. Moreover, Petitioner contends that counsel should have argued that "no physical evidence presented at trial [supported her] standing over the victim and shooting him while he was

on the ground." [*Id.* at 24]. Petitioner adds that the "only evidence presented [was] the testimony of two civilian witnesses," one of whom "was impeached on the stand." [*Id.*]. The postconviction court held that Petitioner could not show deficiency or prejudice on this claim. [ECF No. 10-1 at 114-15, 121].

3.      *Discussion*

"[Florida Rule of Criminal Procedure] 3.380(a) provides that a motion for judgment of acquittal should be granted if, at the close of the evidence, the court is of the opinion that the evidence is insufficient to warrant a conviction." *Tibbs v. State*, 397 So. 2d 1120, 1123 n.9 (Fla. 1981). "There is sufficient evidence to sustain a conviction if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." *Baugh v. State*, 961 So. 2d 198, 204 (Fla. 2007) (citation omitted).

Here, there is a reasonable argument that trial counsel did not deficiently argue the motion for judgment of acquittal. Trial counsel argued, albeit conclusorily, that the state failed to present forensic evidence linking Petitioner to the crime, which is the essential argument that Petitioner makes here. Indeed, the state conceded throughout the trial that it was basing its case on eyewitness testimony (a form of direct evidence) and circumstantial evidence.

Although Petitioner's argument here is somewhat more detailed than counsel's, the fact that the investigators did not recover a bullet from the scene does not mean that the evidence was insufficient to support the conviction. Again, the eyewitness testimony and circumstantial evidence supported the state's theory that Petitioner approached a decumbent, disarmed, and dying Rutledge, said "this N**** ain't dead yet," and shot him in the face with the subject pistol. Furthermore, viewing the evidence in the light most favorable to the state, the jury readily could

have concluded that the investigators did not recover the round from this shot for various reasons (e.g., they overlooked it).

In short, there is a reasonable argument that counsel did not deficiently argue the motion for judgment of acquittal. Counsel challenged the state's forensic evidence. And the court would have rejected the few additional arguments that Petitioner faults counsel for not making. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014) (failure to raise a meritless claim not prejudicial under *Strickland*).

In sum, the state courts' rejection of claim 10 was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Thus, this claim should be denied.

## IV.    Evidentiary Hearing

"[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated [on the merits] by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers*, 776 F.3d at 1295. Here, most of Petitioner's claims were adjudicated on the merits and she has not demonstrated such an error. Thus, she is not entitled to an evidentiary hearing on these claims. Nor is she entitled to an evidentiary hearing on her remaining claims. For one, "the record . . . precludes habeas relief[] [on these claims]." *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Furthermore, the court could "adequately assess [Petitioner's] claim[s] without further factual development." *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## V.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing § 2254 Cases. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.* "If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." R. 11(b), Rules Governing § 2254 Cases.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a petitioner's constitutional claims on the merits, "a petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). By contrast, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, the Undersigned denies a certificate of appealability. If Petitioner disagrees, she may so argue in any objections to this Report filed with the District Judge. *See* R. 11(a), Rules Governing § 2254 Cases ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## VI.    Recommendations

As discussed above, it is **RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] be **DENIED**; that no certificate of appealability issue; that final judgment be entered; and that this case be closed.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 15th day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

Teryleisha E. Wright
W30964
Homestead Correctional Institution
Inmate Mail/Parcels
19000 SW 377th Street
Florida City, FL 33034
PRO SE

Don M. Rogers
Attorney General Office
1515 N Flagler Drive
9th Floor
West Palm Beach, FL 33401-3432
561-837-5000
Fax: 837-5099
Email: fedcourtfilings@oag.state.fl.us

Noticing 2254 SAG Broward and North
Email: CrimAppWPB@MyFloridaLegal.com